IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JULIET S. WILLIAMS, on behalf of
Sanjay S. Garcha, deceased,

        Plaintiff,

v.                                                   CIV 12-0141 KBM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION & ORDER

Plaintiff moves to reverse and remand the Administration's denial of benefits to her son, decedent Sanjay Garcha, who died of a drug overdose on October 12, 2010. *See Docs. 18, 19, 23;* Administrative Record ("*Record*") at 223. Although both disability and supplemental security income benefits were at issue at the administrative level, Plaintiff cannot recover the latter. Accordingly, this appeal and opinion only address the denial of disability benefits, which cover the very limited period from onset in August 30, 2004 to date last insured of June 30, 2005. *See, e.g.,* Doc. 20 at 2, 14, 16, n.13; Doc. 21 at 1.

The general inquiry is whether Administrative Law Judge ("ALJ") Ann Farris applied the correct legal standards, and whether her decision is supported by substantial evidence. A deficiency in either area is independent grounds for remand. *See, e.g., Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005); *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004). This matter is exceptionally well-briefed by both parties, and the Court incorporates their arguments and authorities herein by reference. Having carefully reviewed the Record and the

parties' positions, the Court grants the motion and remands the matter to the Administration for further proceedings.

Garcha lived in Las Cruces, New Mexico and filed for benefits there. *See, e.g., Record* at 61-64, 190, 198 (applications and initial and reconsideration denials).[1] ALJ Farris concluded that, with his abuse of alcohol and drugs, Garcha's chronic mental impairments met Listings-level severity. She further concluded that, without the alcohol and drug abuse, Garcha did not meet the Listing and, although he could not perform his past relevant work, he would retain a residual functional capacity to perform the jobs identified by a vocational expert. *See id.* at 17-21.

Plaintiff's primary argument is that the ALJ did not properly assess the materiality of Garcha's substance abuse and that the Commissioner does not adequately distinguish the cases she relies upon. The cases Plaintiff cites include binding precedent that originated in this District – *Salazar v. Barnhart,* 468 F.3d 615 (10th Cir. 2006) – and a Seventh Circuit decision – *Kangail v. Barnhart,* 454 F.3d 627 (7th Cir. 2006). I find this ground dispositive of remand.

*Salazar* noted the "special statutes and regulations governing drug and alcohol cases." 468 F.3d at 622. That is:

> The Contract with America Advancement Act of 1996, Pub.L. No. 104-121, 110 Stat. 848, 852 (enacted March 29, 1996) added an extra step to the five-step sequential evaluation for claimants with DAA. The Act amended the Social Security Act to provide that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the

---

[1] Documents 16-1 through 16-11, 17-1 through 17-5, 18-1 through 18-5, and 19-1 through 19-3 comprise the Record. The Court cites the Record's internal pagination, rather than the CM/ECF document number and page. Two ALJs stationed in Albuquerque, New Mexico (Kim Parrish and Barry Robinson), held two hearings in 2010. On both occasions, Garcha appeared via video conference from El Paso, Texas. *See id.* at 30, 55. ALJ Farris, who issued the decision, is also located in Albuquerque. *See, e.g.,* http://www.disabilityjudges.com/state/new-mexico/albuquerque.

Commissioner's determination that the individual is disabled."   42 U.S.C. § 423(d)(2)(C); *see also McGoffin* [*v. Barnhart,* 288 F.3d 1248, 1251 (10th Cir. 2002)].

The Commissioner's implementing regulations set forth the analysis to be followed by an ALJ in a case involving DAA:  "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. § 416.935(a).  And 20 C.F.R. § 416.935(b) sets forth the process the Commissioner follows when there is medical evidence of drug addiction or alcoholism.

Shortly after the law was amended, the Commissioner sent out a *teletype* on applying the new law, which speaks to situations where a claimant has one or more other mental impairments in addition to DAA.  It stresses the need for careful examination of periods of abstinence and also *directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the DAA is not a contributing factor material to the disability determination:*

> 29.  Q.  The most complicated and difficult determinations of materiality will involve individuals with documented substance use disorders and one or more other mental impairments.  In many of these instances, it will be very difficult to disentangle the restrictions and limitations imposed by the substance use disorder from those resulting from the other mental impairment(s).  Can any examples be provided for how to handle the materiality determination in these situations, or can any guidance be provided for the type of information that should be used in trying to assess the impact of each impairment?
>
> A.  We know of no research data upon which to reliably predict the expected improvement in a coexisting mental impairment(s) should drug/alcohol use stop.  The most useful evidence that might be obtained in such cases is that relating to a period when the individual was not using drugs/alcohol.   Of course, when evaluating this type of evidence consideration must be given to the length of the period of abstinence, how recently it occurred, and whether there may have been any increase in the limitations and restrictions imposed by the other mental impairments since the last period of abstinence.   When it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate.

Aplt. Br., Ex. A at 3-4.

With regard to the materiality finding, the Commissioner's *teletype further directs that where a medical or psychological examiner cannot project what limitations would remain if the claimant stopped using drugs or alcohol, the disability examiner should find that DAA is not a contributing factor material to the disability determination:*

> 27. Q. Is it appropriate for an MC/PC [medical consultant/psychological consultant] to conclude that he/she cannot project what limitations, if any, would remain if drug/alcohol use stopped and let the DE [disability examiner] make a determination that DAA is not material?
>
> A. Yes. There will be cases in which the evidence demonstrates multiple impairments, especially cases involving multiple mental impairments, where the MC/PC cannot project what limitations would remain if the individuals stopped using drugs/alcohol. In such cases, the MC/PC should record his/her finding to that effect. Since a finding that DAA is material will be made only when the evidence establishes that the individual would not be disabled if he/she stopped using drugs/alcohol, the DE will find that DAA is not a contributing factor material to the determination of disability.

*Id.* at 2.

Although the ALJ cited the drug and alcohol regulations in his decision, he never mentioned the Commissioner's teletype. Granted, the failure to specifically mention the teletype is not fatal. What is fatal, however, is that there is not substantial evidence to support the ALJ's conclusion that Ms. Salazar would not be disabled in the absence of her DAA. Therefore, whether we view the ALJ's error as misapplication of the law or the lack of substantial evidence, the result is the same and the decision must be reversed. *See Hamlin* [*v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004)].

*Id.* at 622-24 (emphasis added).

The *Kangail* decision explained that if claimant "has a potentially disabling illness and is a substance abuser," an ALJ must decide whether the claimant "would still be disabled" if he or she "were . . . not a substance abuser," and if a claimant is deemed disabled "independent of your drug addiction or alcoholism," he or she is entitled to benefits. 454 F.3d at 628-29. Where

claimants have bipolar disorder, the materiality question is not put to rest by the simple

observation that a claimant improves when not abusing drugs or had periods of normal behavior.

Thus, aggravation of bipolar symptoms due to substance abuse does not "prove" the mental

illness is not disabling:

> The administrative law judge inferred from the improvement in the plaintiff's condition after she got "clean" that her only problem was substance abuse, but in so concluding he rejected abundant medical testimony without giving adequate reasons for doing so; he "played doctor," as the cases say. . . .
>
> He thought the medical witnesses had contradicted themselves when they said the plaintiff's mental illness was severe yet observed that she was behaving pretty normally during her office visits.  There was no contradiction; bipolar disorder is episodic.  The judge went so far as to attribute bipolar disorder to substance abuse, although the medical literature, while noting a positive correlation between the two conditions and speculating that alcohol may trigger bipolar symptoms, does not indicate that the disorder itself can be so caused. . . .
>
> What is clear is the reverse – that bipolar disorder can precipitate substance abuse, for example as a means by which the sufferer tries to alleviate her symptoms. . . .  There was medical testimony that the plaintiff has "a tendency to indiscriminately use drugs and alcohol" during her manic phases, which are frequent-about monthly.  But the fact that substance abuse aggravated her mental illness does not prove that the mental illness itself is not disabling.

*Id.* at 629 (internal citations omitted).  *Salazar* also noted the connection between a mental

disorder and substance abuse.  There, the ALJ failed to consider the claimant's borderline

personality disorder, and the Tenth Circuit found that "particularly troublesome" because the

mental condition "may account for her abuse of drugs and alcohol, as well as her suicidal

conduct and self-mutilation."  468 F.3d at 622.

Federal decisions are split on the question whether the Commissioner or the claimant

bears the burden of proving materiality of substance abuse.  *See, e.g., Whitney v. Astrue,* ___ F.

Supp. 2d ___, ___, 2012 WL 3686651, at **7-9 (N.D. Ill. Aug. 24, 2012) (and cases discussed

therein).  The Tenth and Seventh Circuits parted ways in that respect until perhaps recently, but

*Salazar* is among those that place the burden on the Commissioner.   Decisions also are not clear whether the teletype defines the inquiry ALJs must make and/or the conclusions they are required to draw in the face of certain fact patterns.  *Compare, Davis v. Astrue,* 830 F. Supp. 2d 31, 38 (W.D. Pa. 2011) (appearing to suggest teletype is controlling), *with Harlin v. Astrue,* 424 F. App'x 564, 568 (7th Cir. 2011) ("[a]ssuming without deciding that the Teletype provisions govern the situation," and citing *Salazar* as a case that treats teletype as applicable standard).

The Court does not construe *Salazar* as holding the teletype dictates a particular result as a matter of law.  A 2012 decision from the Tenth Circuit reiterates *Salazar*'s continued applicability.  *See Zemp-Bacher v. Astrue,* ___, F. App'x ___, ___, No. 10-5067, 2012 WL 1327815 (10th Cir. Apr. 18, 2012).  Thus, denial of benefits that does not "mention the teletype or follow its guidance," constitutes a "fatal" legal error that alone will constitute grounds for reversal.  *Id.* at **1, 2.  Rather, as the *Salazar* opinion explained ,"regardless of the teletype's impact, an ALJ errs if 'there is not substantial evidence to support the ALJ's conclusion that [the claimant] would not be disabled in absence of her [addiction].'"  *Id.* at *2 (quoting *Salazar*, 468 F.3d at 624).

Inadequate discussion that leaves the Court to speculate what evidence led the ALJ to her conclusions, puts the decision beyond meaningful judicial review.  *See, e.g., Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) (emphasis added) ("Such a bare conclusion is beyond meaningful judicial review."); *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (court "left to speculate what specific evidence led the ALJ to [his conclusion]").  Here, the decision is almost completely devoid of any discussion of the pertinent medical and testimonial evidence, and the ALJ's conclusory findings are patently plainly internally contradictory.

It is clear from *Salazar, Kangail,* and *Zemp-Bacher,* and the application of their holdings by district courts, that mental disorders and substance abuse can be highly interrelated and that the difficult analysis should not be made superficially. Moreover, the absence of medical evidence addressing materiality can be entirely dispositive. For example, a court from the Seventh Circuit recently stated:

> The ALJ ignored Wright's clearly erroneous statement and chose to point to this individual examination as proof that Wright ceased his addiction for a period of time. Not only was this statement clearly erroneous, but it was not enough to support the in depth analysis the ALJ must make to separate the claimant's mental impairment from his drug and alcohol abuse. *Salazar,* 468 F.3d at 624–25. It is impossible to discern from this one consultative examination how long Wright ceased his substance dependence and what effect that had on his abilities. The record was devoid of any medical or psychological reports, opinions, or projections as to the claimant's remaining limitations if he stopped using drugs or alcohol.

*Wright v. Astrue,* No. 4:10 cv. 35, 2011 WL 1486208, at *9 (N.D. Ind. Mar. 31, 2011) (applying *Salazar* and *Kangail*), report and recommendation adopted, No 4:10-CV-35-TLS, 2011 WL 1483372 (N.D. Ind. Apr. 19, 2011). The Tenth Circuit similarly reversed and remanded in *Zemp-Bacher* because of the ALJ's deficiencies in evaluating the evidence. The errors and deficiencies here are equally egregious to those in *Zemp-Bacher.*

First, the ALJ's decision does not specify what portions of Garcha's testimony or written submissions she is contemplating, but deems these unspecified "claimant's allegations . . . not fully credible." *Record* at 17. In other spots, the ALJ relies exclusively on Garcha's report of daily activities as support for her decision. *See, e.g., id.* at 18.

Second, the only time frame now at issue is the one-year period between August 30, 2004 and June 30, 2005, but the earliest medical records for Garcha do not begin until January 2005. The Commissioner asserts that [t]here are no significant treatment records between Claimant's

alleged disability onset date on August 30, 2004, and January 2005," which the Court will accept as a representation that the present record contains all available records. *Doc. 21* at 5.[2]  The ALJ's decision does not contain ***any*** discussion of the medical evidence save for reciting the cryptic notes made by the nonexamining agency physician who executed a Psychiatric Review Technique form.  Except for one note about a January 2005 treatment, all of the events noted on the form occurred well outside the date last insured in late 2005 or 2006.  *See, e.g., id.* at 16; *see also id.* at 571.

As Plaintiff's motion reflects, however, ***from January to April 2005, Garcha either was hospitalized or received treatment four times.***  On three of those occasions, either he had attempted, reported thoughts of, or was deemed at risk of attempting suicide.  On two of those occasions, alcohol or drug abuse was present or reported.   At the time, he had been prescribed the SSRI Lexapro, the antidepressant Remeron, and/or Trazadone, use to treat insomnia, schizophrenia, and anxiety.   *See* Doc. 20 at 4-6.  If the entire year is considered, from January to December 2005, Garcha either was hospitalized or received treatment ***seven*** times.  On five of those occasions, either he had attempted, was suspected of attempting, threatened, reported thoughts of, or was deemed at risk of, attempting suicide.  On five of those occasions, alcohol or drug abuse was present or reported.  *See id.* at 4-9.[3]  The agency physician and ALJ do not

---

[2]  The parties do not discuss, and the record does not affirmatively reflect, why his earlier medical records are missing.  Perhaps no one sought them out because Garcha did not list them, or because he appears to have been living in the Washington, D.C. area and did not move to New Mexico until May 2004.  *See Record* at 214-22, 231-34, 252, 273, 275, 282, 583.

[3]  From January 2005 through June 2006, Garcha either was hospitalized or received treatment ***ten*** times. On seven of those occasions, either he had attempted, was suspected of attempting, threatened, reported thoughts of, or was deemed at risk of attempting suicide.  On six of those occasions, alcohol or drug abuse was present or reported.  *See Doc. 20* at 4-6.

discuss this other 2005 evidence, which plainly suggests medication for Garcha's condition did not guarantee his sobriety.

Third, though Garcha was initially diagnosed with "mood instability" in February 2005, *see Record* at 729, it was not until June 2006 when was diagnosed with bipolar disorder during treatment with Dr. Alexander.  ALJ Farris fully credits the 2006 bipolar diagnosis as a severe medically determinable impairment of Listings level severity and gave the agency physician's review "great weight . . . because he deals with the periods of 2005 ***and 2006.***"  *Id.* at 17 (emphasis added).  It is plain that ALJ Farris considered the post-last-insured date events in 2006 to be significant because they reflected continued substance abuse by Garcha after his bipolar diagnosis, and the agency physician was of the view that Garcha's substance abuse "IS MATERIAL."  *Id.*  Immediately after crediting the agency physician and the beyond-date-last-insured time frame he employed, she rejected submissions from Garcha's treating psychiatrist Dr. Harold Alexander, *see id.* at 685, on the very same basis.  She gave Dr. Alexander's submissions "little weight because they do not address periods prior to the claimant's dated last insured of June 30, 2005."  *Id.* at 18.  However, Dr. Alexander was Garcha's treating psychiatrist during the June 2006 episode that figures prominently in the agency physician's notes,[4] and thereafter in 2006 during the episodes of continued drug use the form notes, evidence which the ALJ relies upon in her analysis.

---

[4]   In June 2006, Garcha had been admitted to Mesilla Valley Hospital after not taking his medications for three months and becoming suicidal.  After June 2006, Dr. Alexander prescribed Garcha a considerable number and variety of drugs.  Dr. Alexander prescribed several daily medications for Garcha:  Ability for "agitation, racing thoughts and hallucinations;" Lexapro for "depression and anxiety;" Lunesta for "insomnia;" Neurontin for "chronic pain and mood stabilizing effects;" Trazadone for "depression and disturbed sleep pattern;" Klonopin for anxiety and panic and disturbed sleep;" Ativan for "chronic anxiety, "and Percocet for "Chronic back pain."  *Record* at 642; *see also, e.g., id.* at 282, 290, 602-03, 642, 648, 683-84.   At times, he had also prescribed Vicodin and morphine sulfate.  *See id.* at 646.

Fourth, the ALJ considered Plaintiff's daily activities for an unspecified period and concluded that, though they "show[] some impairments and work restrictions," they do not "support total disability," because his symptoms are controlled by medication.  *Id.* at 18.  Her conclusion that the "[m]edical evidence of record does not show that he has a serious physical or mental impairment, or other issue that is not controlled through the use of medication," is at odds with the medical records from 2005 and 2006 which, as discussed earlier, reflect continued substance abuse while medicated.   That is medical evidence of the close interrelatedness of the condition and abuse mentioned in the cases quoted.  It is the same conclusion drawn by Dr. Alexander in his opinion that the ALJ rejected – that Garcha's "substance abuse was self-medicating for his bipolar disorder."  *Id.* at 19.   Indeed, given the medical evidence the agency physician cited and the Listings at issue, it seems evident that the ALJ concluded Garcha met the "Substance Addiction Disorders" Listing because his post-June 2006 medications were not controlling his substance abuse.[5]

Fifth, the ALJ rejected Dr. Alexander's "self-medicating" opinion out of hand, because it "does not establish that [Garcha] is unable to work if he refrains from substances abuse."  *Id.* That may be so, but the agency physician's form suffers from the exact same deficiency.

---

[5]   The ALJ issued her decision on August 5, 2010.  *See id.* at 21.  The Listings in effect at that time and during the closed period of disability are identical.  The ALJ and agency physician found that Garcha "meet[s] Listing Section 12.09 with 12.04."  *Id.* at 17; *see also id.* at 565, 569-70.  That means they found Garcha suffered from and met "12.09 *Substance Addiction Disorders:*  Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.09.  The "required level of severity for" a substance abuse disorder "is met when the requirements in [specified other listings] are satisfied," and one of those is "Depressive syndrome. . . . 12.04."  Id., § 12.09(B).  Garcha met the criteria for Listing 12.05 because his " bipolar syndrome" was accompanied by "[m]arked difficulties in maintaining concentration, persistence, or pace: and "[r]epeated episodes of decompensation, each of extended duration."  *Id.,* § 12.04(A) (3),  (B) (3)-(4); *see also Record* at 570.

Though the ALJ does not specifically cite the agency physician in the section that contains her materiality analysis, elsewhere her decision emphasizes his conclusion that Garcha's substance abuse was material and she gave that report "great weight."  Without explanation by the ALJ, the Court cannot conclude that she relied on the form greatly for Listings purposes and wholly ignored it for materiality purposes.  The state agency physician's opinion reflected in the form, that Garcha meets a listing because of substance abuse "makes no attempt to separate the effects of substance abuse, or project what limitations would remain if the substance abuse stopped" and thus does not constitute "substantial evidence."  *Smotherman v. Astrue,* No. CIV–11–311–HE, 2012 WL 2256762, at *4, n.8 (W.D. Okla. Apr. 30, 2012); *see also Jobe v. Astrue,* No. 11–1139–SAC, 2012 WL 1059886, at *4 (D. Kan. Mar. 28, 2012) ("given the fact that these non-examining sources offered no opinion regarding plaintiff's limitations in the absence of substance use, the ALJ cannot not rely on this mental RFC assessment to find that plaintiff would not be disabled if he stopped substance use").

Sixth, the ALJ's specific materiality finding suffers from the same lack of substantial evidence.  She attributes every episode of decompensation to be associated with substance abuse, and periods of sobriety accompanied by the ability to plant gardens, and care for himself and his animals.  She thus concluded that if Garcha quit abusing alcohol and drugs, he would no longer meet Listing 12.04 because one of the two necessary criteria – repeated and extended episodes of decompensation" – would not exist.  *See Record* at 18, 19.  Having reviewed the medical record, neither the agency physician nor any of Garcha's treating physicians discussed what his abilities would be if he stopped using drugs and alcohol, yet the evidence shows that he had a "long-standing alcohol abuse problem" and  "[t]herefore, the ALJ's conclusion that [he] would not be

disabled absent his dependence on alcohol and illegal substances was not supported by substantial evidence of record." *Wright,* 2011 WL at *10.

The situation and outcome in *Zemp-Bacher* is analogous. There, the ALJ concluded that the claimant would have a greater functional capacity without substance abuse, but to "support this finding," the ALJ "relied on only two pieces of evidence: (1) [claimant's] testimony that "she was doing better since starting counseling and medication" and (2) . . . treatment notes indicating some improvement." *Zemp-Bacher,* 2012 WL at *2. The Tenth Circuit held that "[e]ven ignoring [the treating physician's] contrary opinion, no reasonable mind could find the vague bits of evidence noting some improvement enough to support a conclusion that [the claimant] would not be disabled in absence of addiction. We thus hold that the ALJ's conclusion was not supported by substantial evidence." *Id.* "[W]here, as here, . . . [t]he Commissioner fails to direct the court to any opinion by any medical source as to Plaintiff's remaining limitations if he stopped using alcohol," reversal is appropriate. *Simpson v. Astrue,* 2011 WL 7006100, at *2 (W.D. Okla. Dec. 21, 2011). Even broadly reading the medical records to reflect that Garcha's mental condition improved or was stable after he detoxified, they say nothing about his functional limitations. *See Doc. 21* at 5-7 (and medical records cited therein).

For these as well as other evidence-specific arguments discussed by Plaintiff, the Court finds remand is warranted. *See Doc. 20* at 15-19. Because the errors above are integrally-related to the residual functional capacity finding, at this time, it is premature and unnecessary to address Plaintiff's other assignment of error concerning the functional limitations that formed the basis of the hypothetical questions to the vocational expert. *See id.* at 19-21.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand *(Doc. 20)* is GRANTED

and this matter REMANDED to the Commissioner for further proceedings.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE